# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**JASMINE MARSHALL,**                      )
)
           **Plaintiff,**       )
)
**v.**                                     )    **Civil Action No. 08-1348 (ESH)**
)
**JOHN E. POTTER,**                        )
**Postmaster General, U.S. Postal Service, *et al.*,** )
)
           **Defendants.**      )
_____ )

## MEMORANDUM OPINION

Plaintiff Jasmine Marshall has brought this action *pro se* alleging that her former employer, the United States Postal Service, discriminated against her, subjected her to harassment, and retaliated against her because of her disability.[1]  Defendants have moved for summary judgment on all of plaintiff's claims.  For the reasons set forth below, the Court will grant defendants' motion.

_____

[1]      While plaintiff does not specify a legal basis for her action, the Court assumes, as do defendants, that she is bringing her claims pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

      Moreover, plaintiff also alleges that the Postal Service union, of which she was a member, refused to represent her and asserts a "grievance" against her supervisor and other postal employees, an Equal Employment Opportunity Commission administrative law judge, and the Postal Service union.  (*See* Compl. at 2.)  Plaintiff, however, has not sued the Postal Service union, and neither it nor the individuals she mentions is a proper party to this lawsuit.  *See* 42 U.S.C. § 2000e-16(c); *Paegle v. Dep't of Interior*, 813 F. Supp. 61, 64 n.2 (D.D.C. 1993) ("Since the Rehabilitation Act draws from the procedures of Title VII, 42 U.S.C. § 2000e-16(c), the only proper defendant is the head of the department, agency, or unit." (citation and internal quotation marks omitted)).

**BACKGROUND**

On April 1, 2006, plaintiff began working as a part-time flexible letter carrier with the postal service on a 90-day probationary basis.  (*See* Defs.' Mot. for Summ. J. [Summ. J. Mot.] Ex. A; Opp'n Ex. 5.)  At all times relevant to this matter, plaintiff worked at the Buckingham Station in Arlington, Virginia, and her immediate supervisor was Neko Santacruz.  (*See* Summ. J. Mot. Exs. A, B, E.)

On May 19, 2006, plaintiff was injured when she hit her right knee on the postal truck. (*See* Compl. at 1; Summ. J. Mot. Exs. G, H.)   Plaintiff submitted a U.S. Department of Labor Form CA-17, Duty Status Report, dated that same day in which a physician diagnosed her as having suffered a "contusion" (bruise), "mild edema" (swelling) and "anterior tenderness" in her right knee.  (Summ. J. Mot. Ex. H.)  The physician indicated that plaintiff could work subject to certain medical restrictions for the next two days and would be able to return to regular duty on May 22, 2006.  (*Id.*)  Specifically, for two days following her injury, plaintiff could lift or carry no more than five pounds continuously and 15 pounds intermittently and could not stand, walk, kneel, bend, or stoop.[2]  (*Id.*)  According to the Duty Status Report, plaintiff's job usually required her to lift or carry up to 10 pounds continuously and up to 40 pounds intermittently, to stand continuously for seven hours per day, walk continuously for five hours per day, kneel intermittently for one hour per day, bend or stoop intermittently for three hours per day, and drive a vehicle intermittently for five hours.  (*Id.*)  At plaintiff's 30-day evaluation dated the same day as the accident, Santacruz rated plaintiff's work performance as "unacceptable" in four

---

[2]     The physician did not indicate whether plaintiff could drive a vehicle.  However, plaintiff was able to engage in other activities, including sitting, twisting, simple grasping, pulling and pushing, and reaching above the shoulder, to the extent required by the job.  (Summ. J. Mot. Ex. H.)

of six categories:  work quantity, work quality, dependability, and work relations.  (*Id.* Ex. C.)
Plaintiff's work performance was rated "satisfactory" in two categories:  work methods and
personal conduct.  (*Id.*)

On May 25, 2006, Santacruz assigned plaintiff a rigorous mail route "knowing [her]
limits."  (Compl. at 1.)  That same day, plaintiff was again examined by a physician, who
completed a Duty Status Report indicating that plaintiff could lift or carry no more than 10
pounds continuously and 20 pounds intermittently, could stand or walk continuously for up to
two hours per day, could not kneel, and could drive a vehicle intermittently for up to two hours
per day.  (Summ. J. Mot. Ex. I.)  The report stated that plaintiff could perform all other activities
to the extent required by the job.  (*See id.*)  From May 25 to June 24, 2006, plaintiff was assigned
to work only 20 hours per week.  (Compl. at 1.)

On June 1, 2006 and June 3, 2006, plaintiff was absent from work without leave.  (*See*
Summ. J. Mot. Ex. E at 15-16.)  Moreover, over a two-week period beginning June 5, 2006,
plaintiff was late for work six times.[3]  (*Id.* Ex. E at 16-17, 19-20.)  At her 60-day evaluation on
June 5, 2006, Santacruz rated plaintiff's work performance as "unacceptable" in all categories.
(*Id.* Ex. C.)

Following an examination by her physician on June 19, 2006, plaintiff was cleared to
return to regular duty with no restrictions as of June 20, 2006.  (*Id.* Ex. K.)

By letter dated June 21, 2006, Santacruz terminated plaintiff due to her "unsatisfactory
ratings in the categories of safety and attendance."  (*Id.* Ex. N.)  Her last day in pay status was
June 24, 2006.  (*Id.* Ex. A at 2.)  On that day, Santacruz completed plaintiff's 80-day evaluation,
again rating her performance as "unacceptable" in all categories.  (*Id.* Ex. C.)  Thereafter, on July

---

[3]        Plaintiff was late on June 5, June 8, and June 12-15, 2006.

17, 2006, plaintiff contacted an Equal Employment Opportunity ("EEO") counselor for the postal service, alleging discrimination based on her physical disability, harassment, and retaliation.  (Reply Ex. 1; *see also* Summ. J. Mot. Ex. O at 1.)

## ANALYSIS

### I.    Standard of Review

A party is entitled to summary judgment if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255.  The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir. 1982)).

In this case, plaintiff is proceeding *pro se*.  While "complaints or motions drafted by *pro se* plaintiffs are held to 'less stringent standards than formal pleadings drafted by lawyers,'"

*Shankar v. ACS-GSI*, 258 Fed. Appx. 344, 345 (D.C. Cir. 2007) (quoting *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007)), a *pro se* plaintiff's inferences "need not be accepted 'if such inferences are unsupported by the facts set out in the complaint.'" *Caldwell v. District of Columbia*, 901 F.Supp.7, 10 (D.D.C. 1995) (quoting *Henthorn v. Dept. of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)). Moreover, "a *pro se* complaint, like any other, must state a claim upon which relief can be granted by the court." *Henthorn,* 29 F.3d at 684 (citing *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

## II.     Discrimination on the Basis of Disability

Defendants move to dismiss plaintiff's discrimination claims on the basis that plaintiff is not disabled within the meaning of the Rehabilitation Act of 1973, 20 U.S.C. § 791 *et seq*. The Rehabilitation Act prohibits federal agencies from engaging in employment discrimination against disabled individuals. 29 U.S.C. § 794(a). The Act employs the same standards to define discrimination as those employed in cases arising under the Americans with Disabilities Act of 1990 ("ADA"). *Id.* § 794(d); *see also Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002) (applying ADA employment discrimination standards to Rehabilitation Act claim). The Rehabilitation Act also adopts the ADA definition of disability. Thus, "[a]n individual is disabled under the Rehabilitation Act only if she can show that she (1) 'has a physical or mental impairment which substantially limits one or more . . . major life activities,' (2) 'has a record of such an impairment,' or (3) 'is regarded as having such an impairment.'"[4] *Adams v. Rice*, 531

---

[4]      In September 2008, Congress enacted the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), which went into effect on January 1, 2009. The Act maintains the same definition of disability as contained in the ADA but adds provisions to clarify several elements of the definition and to reject limitations imposed by the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) and *Sutton v. United Air Lines*, 527 U.S. 471 (1999). However, the ADA Amendments Act is not to be applied retroactively. *See, e.g., Fikes v. Wal-Mart, Inc.,* No. 08-12773, 2009 U.S. App. LEXIS 7669, at

F.3d 936, 943 (D.C. Cir. 2008) (quoting former 29 U.S.C. § 705(20)(B)); *see also* 42 U.S.C. § 12102(1).

Because plaintiff cannot show that she was disabled under the Rehabilitation Act while employed with the Postal Service, her discrimination claims must fail as a matter of law.  To qualify as disabled under the first prong of the Rehabilitation Act's definition, plaintiff must not only show that she has a physical or mental impairment that limits a major life activity, but she must also show that the limitation is substantial.  *Toyota Motor Mfg.*, 534 U.S. at 195.  The Supreme Court has held that to be substantially limited in performing a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment's impact must also be permanent or long-term."  *Id.* at 198 (citation omitted); *see also* 29 C.F.R. § 1630.2(j)(2) (listing the following factors to be considered in determining whether an individual is substantially limited in a major life activity:  "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment").

In this case, there is *no* evidence to indicate that her knee injury was anything more than a temporary condition that was unlikely to have a permanent or long-term impact.  Immediately following her injury, plaintiff's physician imposed limited duty restrictions for only two days.

---

*1-*2 n.1 (11th Cir. Apr. 10, 2009); *EEOC v. Agro Distribution LLC*, 555 F.3d 462, 469-70 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008); *Parker v. Midwest Air Traffic Control*, No. 08-218, 2009 U.S. Dist. LEXIS 40054, at *12-*14 (W.D. Pa. May 12, 2009) and cases cited therein.  *But see Jenkins v. Nat'l Bd. of Med. Examiners*, No. 08-5371, 2009 U.S. App. LEXIS 2660, at*3 (6th Cir. 2009) (holding that "because this case involves prospective relief and was pending when the amendments became effective, the ADA must be applied as amended").  In the instant case, plaintiff seeks money damages and no prospective relief.  Accordingly, *Jenkins* is inapplicable.

(*See* Summ. J. Mot. Ex. H.)  While restrictions were again imposed on May 25, 2006, these new restrictions were significantly less severe than those initially imposed, and plaintiff was cleared for regular duty by June 20, 2006, only one month after her injury.[5]  (*See id.* Exs. I, K.)  Thus, plaintiff cannot show that she was actually disabled.  *See Aguillard v. Mukasey*, 295 Fed. Appx. 619, 622 (5th Cir. 2008) (per curiam) (where medical evidence revealed that plaintiff's job-related back injury was not permanent or long-term, he was not disabled under the Rehabilitation Act); *Addoo v. N.Y. City Bd. of Educ.*, 268 Fed. Appx. 141, 142-43 (2d Cir. 2008) (affirming summary judgment on the basis that plaintiff's leg and back pain, assuming that it constituted an impairment under the statute, was not severe, was of limited duration, and was unlikely to have a permanent or long-term impact).

Moreover, plaintiff cannot show that she had a record of a disability as she was first injured while employed with the Postal Service.  *See Adams v. Rice*, 531 F.3d 936, 946 (D.C. Cir. 2008) (noting that plaintiffs may satisfy the "record of" definition by showing that they have a history of a qualifying impairment).  Likewise, plaintiff's own allegations make clear that Santacruz did not regard her as disabled.  (*See* Summ. J. Mot. Ex. O at 1.)  *See also Adams*, 531

---

[5]      Plaintiff appears to suggest in a filing she made as part of the investigation into her EEO complaint that her condition was of longer duration.  (*See* Summ. J. Mot. Ex. J at 9, response to Affidavit Question 12, indicating that plaintiff's condition had not ended as of November 2006.)  However, plaintiff conceded that her knee injury was temporary.  (*See id.*, response to Affidavit Question 11.)  This characterization is consistent with that of her doctors.  In fact, in an Attending Physician's Report, dated December 1, 2006, plaintiff's physician reiterated that no permanent effects were expected from plaintiff's injury and that she had been cleared to resume regular duty as of June 20, 2006.  (*See id.* Ex. L.)  While plaintiff submits a certificate dated the same day from this same physician that appears to impose a work restriction on lifting 75 pounds until follow up in one month (*see* Opp'n Ex. 1), plaintiff's employment with the Postal Service had been terminated for over five months as of the date of this certificate.  Furthermore, it is doubtful that the ability to lift 75 pounds is a major life activity under the test articulated by the Supreme Court in *Toyota Motor Mfg.  See Aguillard v. Mukasey*, 295 Fed. Appx. 619, 622 (5th Cir. 2008) (per curiam) (finding that prohibition on lifting more than 30 pounds did not imply that plaintiff's impairment limited a major life activity).  There is also no evidence that plaintiff's job with the Postal Service required her to lift 75 pounds.

F.3d at 945 ("An individual is 'regarded as' disabled if her employer mistakenly believes that [she] has a physical impairment that substantially limits one or more major life activities or mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." (citation and internal quotation marks omitted)).

Accordingly, plaintiff cannot show that she was disabled during her employment with the Postal Service; thus, her disability discrimination claims fail.[6]

## III.    Hostile Work Environment

Plaintiff also alleges that she suffered harassment on the basis of her knee injury.  To make out a *prima facie* case of a hostile work environment based on disability, plaintiff must show that (1) she is a qualified individual with a disability; (2) she was harassed; (3) the harassment occurred because of her disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment but took no action to prevent it.  *Zeigler v. Potter*, 510 F. Supp. 2d 9, 17 (D.D.C. 2007).  Because plaintiff was not disabled under the Rehabilitation Act, her hostile work environment claim fails.[7]

---

[6]     It also appears that plaintiff failed to exhaust her administrative remedies regarding the claim that she experienced disability discrimination when on May 25, 2006, Santacruz "assigned [her] a rigorous route knowing [her] limits."  (Compl. at 1.)  Plaintiff was required to contact an EEO counselor within 45 days of the allegedly discriminatory incident.  *See* 29 C.F.R. § 1614.105(a)(1).  According to defendants' records, however, the date of plaintiff's initial contact with the EEO office was July 17, 2006.  (*See* Reply Ex. 1.)  While plaintiff disputes this date (*see* Reply at 2), she offers no proof to dispute defendants' evidence.  Accordingly, plaintiff's allegations regarding this discrete act of alleged discrimination are time-barred.  *See Patterson v. Johnson*, 505 F.3d 1296, 1297 (D.C. Cir. 2007) (upholding summary judgment to defendant on claims based on alleged actions taken more than 45 days prior to plaintiff's initial contact with EEO counselor).

[7]     Even assuming that plaintiff was disabled, she cannot show that Santacruz's conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)

### IV.    Retaliation

Finally, plaintiff alleges that she suffered retaliation.  The Rehabilitation Act provides a cause of action for retaliation pursuant to its incorporation of § 12203(a) of the ADA, 42 U.S.C. § 12203(a), which prohibits employers from retaliating against an employee because he or she has opposed an unlawful employment practice or made a charge or participated in an EEO investigation or proceeding.[8]  *See* 29 U.S.C. § 794(d); *Zeigler*, 510 F. Supp. 2d at 17.  To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in a statutorily protected activity; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the two.  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007).  In the retaliation context, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  To establish a causal connection between the adverse action and the protected activity, a plaintiff must show that the employer had knowledge of the protected activity and that the adverse action occurred soon

---

(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To determine whether a hostile work environment exists, courts must consider "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Id.* (citation omitted).  These standards are intended to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language . . . ."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988) (citation and internal quotation marks omitted).  Having considered plaintiff's allegations, as well as supplemental materials from plaintiff's administrative proceeding to clarify her claims, *see Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (explaining that lower courts may "consider supplemental material filed by a *pro se* litigant in order to clarify the precise claims being urged"), the Court must conclude that, as a matter of law, plaintiff cannot make out a hostile work environment claim.

[8]    Specifically, § 12203 provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act."

thereafter or introduce direct evidence that the adverse action would not have occurred but for the protected activity.  *Brantley v. Kempthorne*, No. 06-1137, 2008 U.S. Dist. LEXIS 38406, *20 n.8 (D.D.C. May 13, 2008).

In this case, plaintiff cannot make out a *prima facie* case of retaliation because the only protected activity identified in the record - - the bringing of an EEO charge and participation in the subsequent EEO proceeding - - did not occur until *after* plaintiff had been terminated.  While there may be a dispute as to the date on which plaintiff first contacted an EEO counselor, it is undisputed that she did not contact the counselor until after she was terminated.  (*See* Opp'n at 2.)  Therefore, because the protected activity followed all the alleged retaliatory acts, there can be no inference of causality, and thus, plaintiff cannot claim retaliation.

## CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion for summary judgment [Dkt. # 12].  A separate Order accompanies this Memorandum Opinion.


                                    /s/
                        ELLEN SEGAL HUVELLE
                        United States District Judge

Date:  July 14, 2009